ISHEE, J.,
for the Court:
¶ 1. In 2009, Dr. Santanu Som, a physician employed by the Natchez Regional Medical Center (hospital), was suspended by the hospital’s board of trustees (board) from practicing intra-abdominal surgeries at the hospital. Dr. Som appealed the board’s decision to the Adams County Chancery Court. The chancery court affirmed the board’s decision. Aggrieved, Dr. Som appeals on the grounds that the *502 hospital prevented him from fully defending himself at a hearing regarding his suspension and that the hospital failed to comply with appropriate standards when reviewing his performance of intra-abdom-inal surgeries. Finding no error, we affirm the chancery court’s judgment.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶2. Dr. Som joined the staff of the hospital on June 10, 2008, as an associate member practicing general surgery. By August 2008, the hospital had received numerous reports from other hospital employees questioning Dr. Som’s pei'formance in intra-abdominal surgeries. Pursuant to the hospital’s medical staff bylaws (bylaws), the hospital’s medical executive committee (committee) ordered a peer review of Dr. Som’s surgical cases.
¶ 3. Shortly after the committee’s peer review had begun, the committee received written complaints regarding Dr. Som’s surgical practices from nurses who had participated in one of his intra-abdominal surgeries at the hospital in November 2008. The complaints were forwarded to the hospital’s chief executive officer (chief). The chief then formed an ad hoc investigative committee (the AHIC) to gather information on Dr. Som’s conduct in intra-abdominal surgeries performed at the hospital.
¶ 4. In February 2009, the committee interviewed Dr. Som. Dr. Som’s interview and the AHIC’s findings were presented to the committee at a hearing on February 27, 2009. The committee then recommended to the chief that Dr. Som’s summary suspension be continued based on quality-of-care and surgical-training concerns. The chief notified Dr. Som by a letter dated March 4, 2009, of the committee’s recommendation. Because the recommendation was adverse to Dr. Som, the bylaws granted him the right to request an appellate hearing on the matter.
¶ 5. Dr. Som retained an attorney and requested a hearing on the proposed continued suspension. Present at the June 2009 hearing were Dr. Som and his counsel; counsel for the hospital, the AHIC, the committee, and the board; six members of the AHIC; and four members of the hospital’s administrative staff. Seven physicians, including Dr. Som, and two nurses were called to testify. Over twenty-five exhibits were entered into evidence.
¶ 6. The bylaws allowed each party the right to cross-examine witnesses at the hearing. During the hearing, Dr. Som requested to personally cross-examine one of the testifying physicians. However, because Dr. Som was also a testifying witness, the committee determined that cross-examination by Dr. Som’s attorney was sufficient to satisfy the bylaws’ provision.
¶ 7. In July 2009, the committee concluded that the suspension of Dr. Som’s clinical privileges to perform intra-abdominal surgeries should be continued. Under the bylaws, Dr. Som sought appellate review by the board. At a hearing in September 2009, the board affirmed the committee’s decision. Dr. Som again appealed to the chancery court on the ground that the committee’s denial of his personal cross-examination of a witness prevented him from fully defending himself and was a direct violation of the bylaws. He also asserted that the hospital failed to adhere to proper standards in its review of his performance in intra-abdominal surgeries. The chancery court affirmed the board’s determination, and Dr. Som now appeals the chancery court’s judgment. Finding no error, we affirm.
DISCUSSION
¶ 8. In reviewing a hospital’s decision to limit a doctor’s privileges, we have held:
*503 No court should substitute its evaluation of such matters for that of the [h]ospital [b]oard. It is the [b]oard, not the court, which is charged with the responsibility of providing a competent staff of doctors. The [b]oard has chosen to rely on the advice of its [m]edical [s]taff, and the court cannot surrogate for the Staff in executing this responsibility. Human lives are at stake, and the governing board must be given discretion in its selection so that it can have confidence in the competence and moral commitment of its staff. The evaluation of professional proficiency of doctors is best left to the specialized expertise of their peers, subject only to limited judicial surveillance. The court is charged with the narrow responsibility of assuring that the qualifications imposed by the [bjoard are reasonably related to the operation of the hospital and fairly administered. In short, so long as staff selections are administered with fairness, geared by a rationale compatible with hospital responsibility, and unencumbered with irrelevant considerations, a court should not interfere.
Lloyd v. Jefferson Davis Mem’l Hosp., 345 So.2d 1046, 1048 (Miss.1977) (quoting Sosa v. Bd. of Managers of Val Verde Mem’l Hosp., 437 F.2d 173, 177 (5th Cir.1971)). Furthermore, Mississippi Code Annotated section 73-25-93 (Rev.2008) provides that hospitals are authorized to “suspend, deny, revoke[,] or limit the hospital privileges of any physician practicing or applying to practice therein, if the governing board ... considers such physician to be unqualified .... ” The statute also provides that such restrictions on privileges must comply with the hospital’s bylaws. As such, our review of the chancery court’s order affirming the board’s determination is very limited. We look to the hospital’s bylaws to determine if the board’s suspension of Dr. Som was permissible.
I. Right to Cross-Examine Witnesses
¶ 9. Dr. Som’s first argument on appeal directly relates to the hospital’s provision under Article 8, Section 5, Bylaw 5.9, which states a physician “shall have the ... right[ ] ... to cross-examine any witness on any matter relevant to the issue of the [committee] [hjearing.” During the committee hearing, Dr. Som requested to personally cross-examine one of the physicians testifying on behalf of the AHIC. The committee denied Dr. Som’s request, but allowed Dr. Som’s attorney to proceed with the cross-examination. Therefore, Dr. Som asserts that his individual right to cross-examine was violated.
¶ 10. At first glance, Dr. Som’s argument appears to have some merit when reading Bylaw 5.9 in solitude. However, preceding Bylaw 5.9 is Article 8, Section 5, Bylaw 5.5, which states: “The affected practitioner ... shall be entitled to be ... represented at the hearing by an attorney.” As in any other civil or criminal matter, the hospital’s bylaws grant an accused the right to be represented by a skilled attorney in the field who acts on behalf of the accused during legal proceedings. Just as a party represented by counsel in any other legal matter may not personally cross-examine a witness at trial, so too do we see logic in not allowing a party represented by counsel to conduct a party led cross-examination during a hospital committee hearing. Party-led examinations and cross-examinations are only proper in cases of pro se litigants. Such logic was reiterated by the hospital in its brief: “Certainly if [Dr. Som] had appeared pro se[,] he himself would have been allowed to conduct his own personal cross-examination.” Accordingly, we find that the hospital adhered to its bylaws *504 during the committee hearing. This issue is without merit.
II. Compliance with Professional Standards Regarding Peer Review
¶ 11. In his second argument on appeal, Dr. Som asserts that the hospital failed to comply with appropriate professional standards in its review and subsequent suspension of him. In support thereof, Dr. Som directs our attention to the following two federal resources: the 1986 Healthcare Quality Improvement Act (HQIA) and the Comprehensive Accreditation Manual for Hospitals (manual) compiled by the Joint Commission on Accreditation and Healthcare Organizations (JCAHO). The HQIA was enacted by Congress to address “[t]he increasing occurrence of medical malpractice and the need to improve the quality of medical care .... through effective professional peer review.” 42 U.S.C. § 11101(1), (3) (2006). Likewise, the manual provides that JCAHO’s mission is to protect the public by providing safe, effective, and high-quality healthcare. The manual provides that a “hospital’s governing body has the ultimate authority and responsibility for the oversight and delivery of healthcare rendered by licensed independent practitioners and other practitioners credentialed and privileged through the [hospital].”
¶ 12. Having reviewed the hospital’s bylaws and the provisions laid out by the HQIA, we find the bylaws adhere to the requirements under 42 United States Code section 11112 (2006). In sum, Dr. Som had the right to receive a written statement of charges, a timely notice of a hearing, a fair hearing, the right to produce evidence at the hearing, the right to be represented by counsel during the proceedings, and an appellate process.
¶ 13. Here, Dr. Som was notified by the hospital in writing on two occasions of the charges against him. In the first letter dated January 21, 2009, the charges were outlined and explained. The letter also advised Dr. Som of the hospital’s bylaws allowing the hospital to further investigate the claim while temporarily suspending his surgical privileges with regard to intra-abdominal procedures. The hospital’s second letter to Dr. Som, dated March 4, 2009, again advised him of the charges against him as well as the suspension of his privileges. The letter also reiterated the bylaws providing him with the right to request a hearing and the right to appellate review of the hospital’s decision. After retaining counsel, Dr. Som requested a hearing and was given a tentative hearing date that was rescheduled numerous times at the joint request of all parties. A hearing took place, during which Dr. Som’s counsel was allowed to examine or cross-examine all witnesses and produce evidence. Dr. Som later utilized the appellate process by appealing the committee’s decision to the board, the board’s decision to the chancery court, and the chancery court’s decision to this Court.
¶ 14. Dr. Som takes issue with the right to a fair hearing. He argues that because Dr. Robert Haimson, one of the members of the AHIC, is business partners with Dr. Carl Passman, one of the members of the committee, the committee’s decision was inherently tainted and biased. However, Dr. Som failed to make any objection to Dr. Haimson and Dr. Passman’s involvement until now. Furthermore, Dr. Som has not provided any evidence other than speculation that the business relationship between the physicians rendered the committee’s decision unfair and subjective. Dr. Som’s entire argument on this point merely states: “[T]he peer reviewers on the [AHIC] in- *505 eluded Dr. Haimson, who is the business partner of a member of [the committee] who determined Dr. Som’s case. Dr. Haimson can hardly be described as an unbiased peer to Dr. Som.”
¶ 15. Dr. Som has failed to show how the mere inclusion of Dr. Haimson in the AHIC or the inclusion of Dr. Passman on the committee prejudiced the committee’s decision. Moreover, as a practical matter, we acknowledge the following statement made by the chancery court in its decision: “[T]he community of physicians [in Natchez] is limited. One would have to be realistic, but fair, in disqualifying physicians in this small pool from reviewing his or her peers as to prevent disqualification ... on perceived competition or associations with other physicians.” We agree and find this issue to be without merit.
¶ 16. Dr. Som goes on to argue that an expert hired by Dr: Kenneth Stubbs, Vice President of Medical Staff Affairs at the hospital, to analyze the accusations against Dr. Som on a professional level failed to conduct a proper peer review. Dr. Som bases his argument on the fact that the expert was only given the facts and records from Dr. Som’s intra-abdominal surgeries but was not told Dr. Som’s name. We find it proper for Dr. Stubbs not to have given the expert reviewer any personal information that could identify Dr. Som. In cases such as this, a proper professional peer review by an expert is meant to produce an unbiased opinion on the manner in which medical procedures have been executed. The review should be conducted without any personal feelings regarding the physician.
¶ 17. Additionally, the expert was not the only witness heard at the hearing. Indeed, Dr. Som testified on his own behalf, called witnesses to the stand, and produced evidence in his favor. As such, the hearing allowed Dr. Som ample opportunity to contradict the expert’s conclusions. These factors negated any hypothetical prejudice suffered by Dr. Som due to the expert’s peer review. Nonetheless, we cannot find error in an expert’s peer review of cases on a strictly factual basis. This issue is meritless.
¶ 18. Finally, Dr. Som contends that the committee made a reversible error by failing to review Dr. Som’s intra-abdominal surgeries at Natchez Community Hospital (NCH), a hospital located in the same geographical area. First, while the hospital had the duty to review Dr. Som’s procedures performed at the hospital, we cannot say the hospital had any duty to review Dr. Som’s procedures at other hospitals. The hospital was charged with ensuring the safety of its patients and the quality of care offered at its location based on the practices of the physicians employed by it. Second, the record reflects that documentation of Dr. Som’s in-tra-abdominal procedures at NCH was gathered by the AHIC and submitted to the committee. Accordingly, there is no evidence to contest that the committee reviewed both the records from the hospital and the records from NCH regarding Dr. Som’s practice of intra-abdominal surgeries. This issue is meritless.
¶ 19. Dr. Som makes several other arguments in passing regarding the fairness of the evidence considered during both the committee hearing and the board hearing. However, each argument goes to the weight of the evidence considered by the committee. The scope of our review prevents us from determining whether the weight of the evidence supported the committee’s and the board’s decisions. We are charged with determining whether the hospital complied with its bylaws during the proceedings against Dr. Som. We conclude that the hospital adhered to its bylaws in accordance with the HQIA and *506 JCAHO standards. Dr. Som was provided with a fair hearing at both the committee level and the appellate level with the board. His arguments are without merit.
¶ 20. THE JUDGMENT OF THE ADAMS COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., RUSSELL AND FAIR, JJ., CONCUR. IRVING, P.J., ROBERTS AND MAXWELL, JJ., CONCUR IN PART AND IN THE RESULT. BARNES AND CARLTON, JJ., CONCUR IN RESULT ONLY.